2026 IL App (1st) 242437-U

No. 1-24-2437

Order filed May 21, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 12960 |
| | ) | |
| JOHN GATELY, | ) | Honorable |
| | ) | Anjana M.J. Hansen, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Trial court's denial of defendant's motion to withdraw his guilty plea affirmed where, on remand, counsel strictly complied with Illinois Supreme Court Rule 604(d) by filing an affidavit with defendant's motion, and counsel's failure to file medical records was not a violation of his duties under the rule.

¶ 2     On August 19, 2022, defendant John Gately pled guilty to first degree murder (720 ILCS 5/9-1(a)(1) (West Supp. 2017)) in exchange for a sentence of 23 years' imprisonment and the *nolle prosequi* of other charges. Through counsel, defendant filed a motion to vacate his guilty plea

pursuant to Supreme Court Rule 604(d) (eff. July 1, 2017), which the trial court denied. On appeal, this court determined that counsel failed to strictly comply with Rule 604(d) by not supporting the motion with an affidavit. *People v. Gately*, 2024 IL App (1st) 221461-U, ¶ 2. Therefore, we vacated the trial court's order denying defendant's motion to vacate his plea and remanded for new postplea proceedings. *Id.* On remand, defendant's newly retained postplea counsel filed a new motion to withdraw defendant's guilty plea, a supporting affidavit from defendant, and counsel's new certificate of compliance with Rule 604(d). Following a hearing, the trial court again denied defendant's motion to withdraw his guilty plea.

¶ 3   On appeal, defendant again contends that counsel failed to fulfill his duties under Rule 604(d). Defendant now argues that, in addition to the affidavit, counsel should have also submitted defendant's medical records to support the claim that a migraine interfered with defendant's ability to enter a knowing and voluntary guilty plea. For the following reasons, we affirm.

¶ 4   The State charged defendant in an 80-count indictment with first degree murder, attempted murder, home invasion, residential burglary, aggravated discharge of a firearm, and aggravated unlawful restraint.

¶ 5   During proceedings on August 18, 2022, the parties discussed defendant's motion to suppress statements made while defendant was in a booking room at the police station and asked the court to review a 45-minute video attached to the motion. At the court's suggestion, the parties agreed to continue the case to the following day to give the court "time to watch that video." Prior to adjourning, the State advised the court that it had tendered a plea offer to defendant for 20 years' imprisonment for murder with a consecutive prison term of 6 years for attempted murder. Defense counsel stated that defendant was "considering" the offer.

¶ 6     Defense counsel then stated, "Mr. Gately was requesting that I ask your Honor to sign a Cermak order for him to be seen for an issue he's having with a tooth that he's put a request in and has not been able to see a dentist." The court replied that it would sign "a Cermak order specifically for what he wants to go to Cermak for." The court then told defendant, who was present in court, "I'm going to bring you back tomorrow. I'll see you in person tomorrow." Defendant replied, "Thank you, your Honor."

¶ 7     The record contains the written "HEALTHCARE ORDER" entered by the court. The order stated that defendant reported that a "molar is causing pain and discomfort." The order further stated that defendant was not on any medication, and that his "tooth [was] causing very bad pain."

¶ 8     The following day, defense counsel informed the court that defendant wished to accept a plea offer from the State. The State explained the offer was for 23 years' imprisonment on one count of first degree murder, with a 3-year term of mandatory supervised release (MSR), and the State would nol-pros the remaining 79 counts. Defendant confirmed he understood the charges against him.

¶ 9     The State explained that the sentencing range for first degree murder was 20 to 60 years' imprisonment with, as charged, an additional firearm sentencing enhancement of 25 years to life. The plea offer was for 23 years without the firearm enhancement.

¶ 10    The court stated that there was a three-year term of MSR with a prison sentence. Defendant asked, "3 plus another 3?" The court explained to defendant that they were discussing "two different things." One was the plea agreement, and the other was the possible sentencing range for the murder charge, of which the court was required to advise him. The court stated that it would have the prosecutor repeat the sentencing range. Defendant then stated, "[s]o I can compare." The

court told defendant that he was correct, and that the prosecutor would repeat the sentencing range. Defendant stated, "[y]es, I understand that." He then asked, "[w]hat is the three years?" Defense counsel explained it was for MSR, or what used to be known as parole. Defendant replied, "[o]kay. That is all I didn't understand." The State repeated the possible sentencing range including MSR and the firearm enhancement, and then repeated the plea offer of 23 years. Defendant confirmed that he understood the possible sentencing range.

¶ 11    The court asked defendant, "understanding the nature of the charge and the range of possible sentence, how are you pleading guilty or not guilty?" Defendant replied, "[g]uilty, your Honor." The court then asked defendant a series of questions. Defendant confirmed that he understood he had a right to plead not guilty and have a trial before a judge or jury, what a jury trial was, and that he was giving up his right to a jury trial. He further confirmed that he had signed a written jury waiver and had discussed it with his counsel. Defendant confirmed he understood that he was giving up his rights to a trial, to see and hear the witnesses against him, to question the witnesses, to present his own witnesses, to remain silent, and to hold the State to its burden of proving him guilty beyond a reasonable doubt. Defendant denied that anyone had threatened him or promised him anything in exchange for his guilty plea or that he was under the influence of drugs or alcohol. He confirmed that he was pleading guilty of his own free will.

¶ 12    The State presented the factual basis stating that the evidence would show that on August 13, 2018, defendant drove to the home of his sister and brother-in-law, Joan and Stephen Shapiro.[1] He rang the doorbell and Stephen answered. Defendant asked for Joan. Stephen said she was unavailable. Defendant then shot Stephen in the arm and chest, killing him. Defendant entered the

[1] Defendant's brother-in-law's first name appears in the record as both Stephen and Steven.

home and threatened to kill Joan, who hid behind furniture. Joan escaped from the home when it appeared defendant's firearm had jammed. Defendant returned to his home and told a neighbor that he had just shot someone and was going to barricade himself inside. Defendant surrendered to police later that night. Police officers recovered ammunition from defendant's home that was consistent with the firearm evidence recovered from Joan and Stephen's home.

¶ 13    Defense counsel stipulated that the factual basis reflected what the testimony would be at trial. Defendant interjected stating, "I don't agree with that." After a discussion off the record, defendant stated, "Yes, I would agree that is what the witnesses would say if they came to court." The court accepted defendant's plea, finding that he understood the nature of the charge against him and the possible penalties, and that he gave his plea freely and voluntarily.

¶ 14    The court asked defendant if there was anything he wanted to say before being sentenced. Defendant stated, "[y]our Honor, I would like to thank the Court for your diligence I guess you would say. I am sorry I am not going to have you judging the trial for me. I am sure it would have been interesting. I guess that is it." The court remarked that all the thanks should go to the attorneys. Defendant stated, "I am sorry I left that out." The court sentenced defendant to the agreed term of 23 years' imprisonment. The court asked defendant if he had any questions. He replied, "[n]ot at this time." The court advised defendant of his appeal rights which defendant confirmed he understood.

¶ 15    On September 12, 2022, defendant, through counsel, filed a motion to vacate his guilty plea asserting that "[his] judgment was impaired due to an apparent migraine." Counsel filed a certificate pursuant to Rule 604(d) stating that she consulted with defendant by phone to ascertain his contentions of error in the entry of his plea and the sentence, examined the trial court file and

report of proceedings of the plea and sentencing hearing, and made any amendments to the motion necessary to adequately present any defects in the proceedings.

¶ 16 At a hearing on September 27, 2022, the State noted that, in violation of Rule 604(d), defendant's motion lacked an affidavit supporting the allegation that he had a migraine that impaired his judgment, a fact which was outside the record. Counsel stated that she could not sign an affidavit because she did not know defendant had a migraine during the plea hearing. Counsel learned of defendant's allegation when he sent her a letter and called her around September 5. Counsel filed the motion for defendant "in order to preserve his issue."

¶ 17 Defendant told the court that he believed that when the parties were discussing his guilty plea, counsel had asked the court to order Cermak Health Services (Cermak) to give him "something to alleviate the migraine." Defendant claimed the doctor refused to see him. Counsel stated that she thought defendant was referring to the healthcare order the court signed when defendant "asked for [a] Cermak order to see the dentist." Defendant stated, "[t]hat is incorrect." Counsel stated that the only healthcare order she had was the one for the dentist. Counsel confirmed that the sole basis for defendant's motion to vacate his guilty plea was that he was impaired by a migraine during the plea hearing.

¶ 18 The State argued that it was defendant's burden to show that withdrawal of his plea was necessary to correct a manifest injustice. The State again noted that defendant's claim that he suffered from a migraine was not supported by an affidavit. The State also noted that no complaints were raised before the court during the plea hearing and that negotiations had occurred prior to that date. The State pointed out that defendant had confirmed that he understood what was happening throughout the plea hearing. Nothing in defendant's demeanor, comportment, or

appearance indicated that he was afflicted with a migraine or any other pain or medical issue but, instead, indicated his plea was knowing and voluntary.

¶ 19   Defendant stated that he believed the State would have withdrawn the plea offer had he not accepted it that day and, thus, there was "a little bit of pressure" to plead guilty. Defendant claimed he told counsel he had a migraine "compounded due to oral surgery." The doctor at the jail would not give him anything for it as he "was already taking Tylenol for the tooth infection." When he returned to the jail on August 18, the doctor refused to see him. Consequently, at the plea hearing on August 19, he "was extremely bothered by this headache."

¶ 20   Defendant further stated that "years ago" he went to a headache clinic because he suffered from bad "clustered migraine[s]." The court stated that defendant's history of migraines was "somewhat relevant but not particularly relevant to the day in question." Defendant replied that he "truly wanted to get this over with and get everything done," but he was "in such pain" that when the pain subsided, he realized he had made a mistake.

¶ 21   The court recalled counsel had explained that defendant was experiencing some pain and discomfort from "a tooth issue" and requested an order for defendant to see a dentist. The parties had been in "constant communication" about the pending plea offer and gave defendant a day to consider it before proceeding with a jury trial. The court stated, "at no time was I ever told that you were experiencing so much discomfort you were having a migraine." The court noted that during the plea hearing, defendant was "very congenial" and thanked the court. Defendant never told the court that he did not feel well, that he was suffering from a migraine, or that he did not understand what was happening. The court recalled it had asked defendant several questions and he replied that he understood the nature of the charge, the sentencing range, and the offer.

¶ 22    The court found that defendant failed to meet his burden to vacate his guilty plea and denied his motion. The court noted that defendant did not provide an affidavit supporting his claim that he had "a migraine that day."

¶ 23    On appeal, this court found that counsel failed to strictly comply with Rule 604(d) because counsel failed to attach to defendant's motion the required affidavit in support of defendant's claim that he had a migraine during the plea hearing. *Gately*, 2024 IL App (1st) 221461-U, ¶ 22. Nor did counsel call defendant to testify, present any other evidence, or make any argument on behalf of defendant's claim, essentially conceding the claim lacked merit. *Id.* ¶ 24. We acknowledged that defendant presented his own argument at the hearing. *Id.* ¶ 27. However, we found it significant that his explanation was provided as argument rather than sworn testimony and pointed out that the trial court twice noted that defendant could have sworn to the truth of his allegation in a supporting affidavit. *Id.* Counsel and defendant also could have clarified their disagreement about the basis of defendant's claim while preparing an affidavit or during a prepared examination of defendant as a witness. *Id.* Thus, an affidavit could have provided the trial court with additional details on which to base its decision. *Id.*

¶ 24    Based on the record, we found that we could not say that the trial court's judgment would necessarily have been the same had counsel supported defendant's claim with an affidavit as required by Rule 604(d). *Id.* ¶ 29. Accordingly, we vacated the trial court's judgment denying defendant's motion to vacate his guilty plea and remanded the case for new postplea proceedings. *Id.* ¶ 30.

¶ 25    On remand, defendant retained new counsel to represent him. At a hearing on June 14, 2024, counsel stated that he needed to request defendant's medical records from Cermak as well

as the Illinois Department of Corrections (IDOC) "which made certain medical findings and recommendations when he got down to IDOC for their initial intake." Counsel wanted the records as "supporting material" to substantiate the allegations in the affidavit. Counsel stated, "I don't know as [*sic*] the medical reports need to be attached to the affidavit, I believe that is a testimonial issue."

¶ 26 On October 4, 2024, counsel informed the court that he had received and reviewed defendant's medical records from Menard Correctional Center and was preparing an affidavit for defendant to sign. The court informed defendant that if he refused to sign the affidavit prepared by counsel, then on the next court date, the court would have defendant sworn under oath and question him about how he felt on the date of his guilty plea.

¶ 27 On October 22, 2024, defendant, through counsel, filed a new motion to vacate his guilty plea maintaining that his judgment was impaired on the date of the plea due to a severe migraine. Defendant alleged that, because of the migraine, he was unable to (1) knowingly waive his right to a jury or bench trial, (2) willingly enter into an informed agreement with the State, and (3) adequately address the court to inform it of his condition.

¶ 28 Defendant further alleged that August 19, 2022, the date of the plea hearing, was the second day of his migraine. He claimed he informed plea counsel of his medical condition on August 18, and that "the case was continued for him to have treatment provided." Defendant stated that he did not receive any treatment on August 18 or 19, and that his migraine persisted for multiple days. Defendant alleged that upon receiving treatment for his migraine, he filed a timely motion to vacate his guilty plea.

¶ 29 Defendant attached to his motion his own affidavit in support of his claims. Therein, defendant averred that during the proceedings on August 18, he complained about having a migraine and head pain and told counsel about his pain and inability to follow along with the proceedings. The information was incorrectly presented to the court as tooth pain. The next day, during the plea hearing, defendant was still in pain and had not seen a doctor or dentist. Defendant told counsel that he was in such pain that he was unaware of what was happening during the court proceedings. Defendant stated that he "was in such pain and discomfort that he was functionally unaware of what he was agreeing to." Defendant repeated that, due to the migraine, he was unable to knowingly waive his right to a jury and bench trial, willingly enter into an informed agreement with the State, or adequately address the court to inform it about his condition. Defendant received medication for his migraine while in IDOC. When he realized what he had agreed to, he initiated the proceedings to vacate his guilty plea.

¶ 30 Defense counsel submitted a certificate pursuant to Rule 604(d) stating that he (1) consulted with defendant in person and by mail to ascertain his contentions of error in the entry of his guilty plea, (2) examined the trial court file and report of proceedings from the guilty plea and sentencing, and (3) amended defendant's motion as necessary to adequately present the defects in the plea proceedings.

¶ 31 The same day, the trial court held a hearing on defendant's motion to vacate his guilty plea. Counsel stated that on August 18, 2022, defendant told his attorney that he was in pain and unable to proceed with the guilty plea and sentencing that day and asked to see a doctor. Counsel claimed there was a "miscommunication" and plea counsel asked for defendant to be seen by a dentist. Defendant did not see a doctor or dentist that day.

¶ 32   Counsel argued that the following day, defendant returned to court to proceed with his plea. Defendant told his attorney that he was still in pain and was debilitated to the extent that he was unable to knowingly and voluntarily waive his rights or accept the court's admonishments. Counsel claimed defendant was suffering from a severe migraine and was essentially unaware of what was happening due to his physical impairment at that time. Defendant's migraine persisted when he was transferred to IDOC. Around August 23, defendant was given medication and his migraine ended. Defendant then realized what occurred at the plea hearing and moved to vacate his guilty plea.

¶ 33   The State argued that no complaints were raised before the court on the day of the plea hearing and pointed out that plea counsel had stated that she could not sign an affidavit attesting to the fact that defendant had a migraine during the plea proceedings because it was unknown to her at that time. The State noted that defendant contacted plea counsel 17 days after the plea claiming he had a migraine.

¶ 34   The State further argued that defendant actively participated in the plea hearing and had stated that he understood the nature of the crime, the possible sentencing range, and the agreed-upon sentence. Defendant engaged in "intelligent communication" with the court, posing questions and acknowledging the court's clarifications. Defendant's demeanor, appearance, and words did not reflect someone who was not functionally aware of what he agreed to, as claimed in his affidavit. In addition, the State argued that the fact that defendant subsequently received medication in IDOC was not relevant to what occurred on the date of the plea.

¶ 35   In rebuttal, defense counsel maintained that defendant was in pain and confused on the date of the plea and, thus, did not enter into a knowing and voluntary agreement. Counsel claimed the

trial court "took caution" and continued the plea hearing to the following day to ensure defendant was entering a knowing and voluntary agreement because, if defendant was in pain, the court did not want to proceed with the hearing. Counsel argued that defendant entered into the agreement based on the recommendation and assertions of his attorney.

¶ 36     The trial court pointed out that the record clearly showed that the reason why defendant's case was continued from August 18 to August 19 was not because the court was told defendant was not feeling well. The case was continued at the court's suggestion because defense counsel had filed additional pretrial motions, the parties had asked the court to view a 45-minute booking video, and defense counsel had a hearing that afternoon at another courthouse.

¶ 37     The court stated that it had reviewed the record from defendant's guilty plea hearing and was standing on its ruling from defendant's initial motion to vacate his guilty plea. On that basis, the court denied defendant's second motion to vacate his guilty plea.

¶ 38     On appeal, defendant again contends that counsel failed to fulfill his duties under Rule 604(d). Defendant argues that, in addition to his affidavit, counsel should have submitted his medical records to support his claim that a migraine interfered with defendant's ability to enter a knowing and voluntary guilty plea. Defendant points out that neither his motion nor his affidavit contained details about the medical treatment he received for his migraine in IDOC. Defendant states that the trial court did not believe he had a migraine and asserts that, if the court had his medical records, "perhaps" it would have believed him, and it "might" have ruled differently. Defendant argues that counsel, therefore, failed to make the necessary amendments to his motion in violation of Rule 604(d). He asks this court to again vacate the trial court's judgment and remand his case for a third round of postplea proceedings.

¶ 39     The State argues that, although defendant's claim was unsuccessful, the record shows counsel competently presented the claim to the trial court, thereby fulfilling his duties under Rule 604(d). The State asserts that, even if the medical records showed that defendant received migraine medication days after his plea, they would not speak to his ability to comprehend the contours of his plea agreement during the proceedings. The State argues that the best indication of defendant's ability to understand and participate in the plea proceedings is the transcript from the proceedings, which shows defendant was an engaged and active participant, and any pain did not interfere with his ability to enter a knowing and voluntary guilty plea.

¶ 40     Rule 604(d) provides that before a defendant can appeal from a judgment entered upon a guilty plea he must, within 30 days of being sentenced, move to withdraw the plea or reconsider the sentence. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The rule is intended to eliminate unnecessary appeals by allowing the trial court to hear and decide claims of impropriety in the entry of the plea, including those that occurred outside the record. *People v. Gorss*, 2022 IL 126464, ¶ 15; *People v. Merriweather*, 2013 IL App (1st) 113789, ¶ 14. Rule 604(d) states, in relevant part, that "[w]hen the motion is based on facts that do not appear of record it shall be supported by affidavit." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 41     Pursuant to Rule 604(d), postplea counsel is required to file a certificate stating that he has (1) consulted with the defendant to ascertain his contentions of error in the sentence and entry of his guilty plea, (2) examined the trial court file and report of proceedings from the guilty plea and sentencing hearing, and (3) amended the motion as necessary to adequately present any defects in the proceedings. *Id.* Counsel's duty to amend the motion includes the duty to attach an affidavit

substantiating any allegations that do not appear of record. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 9.

¶ 42    Counsel must strictly comply with Rule 604(d). *People v. Brown*, 2024 IL 129585, ¶ 48. Failure to do so requires remand for the filing of a new motion to withdraw the guilty plea and a new hearing on the motion. *Id.* Where counsel has filed a facially valid certificate of compliance with Rule 604(d), we may examine the record to ascertain whether he actually fulfilled his duties under the rule. *Bridges*, 2017 IL App (2d) 150718, ¶ 8. Whether counsel strictly complied with Rule 604(d) is a question of law that we review *de novo*. *Brown*, 2024 IL 129585, ¶ 48.

¶ 43    Here, we vacated the trial court's denial of defendant's first motion to vacate his guilty plea because the facts supporting defendant's allegation that his judgment was impaired by a migraine were not apparent on the record and counsel failed to attach an affidavit to the motion as required by Rule 604(d). *Gately*, 2024 IL App (1st) 221461, ¶ 22. Nor had counsel presented any argument on behalf of defendant's claim, thereby essentially conceding the claim lacked merit. *Id.* ¶ 24.

¶ 44    The record reveals that those failures were remedied on remand when defendant's new counsel filed a new, more detailed, motion to vacate defendant's guilty plea and attached defendant's affidavit in support of his claims. Counsel specified in the new motion that defendant's "severe migraine" prevented him from (1) knowingly waiving his right to a jury or bench trial, (2) willingly entering into an informed agreement with the State, and (3) adequately addressing the court to inform it of his condition. The motion further alleged that defendant informed plea counsel of his medical condition on August 18, the case was continued to the next day so defendant could receive treatment, but he did not receive treatment and his migraine persisted for multiple days.

¶ 45    The allegations in defendant's new motion were supported by his affidavit in which defendant averred that during the proceedings on August 18, he told counsel he had a migraine and head pain and was unable to follow the proceedings. He claimed counsel incorrectly told the court he had tooth pain. Defendant stated that the next day at the plea hearing, he told counsel he "was in such pain and discomfort that he was functionally unaware of what he was agreeing to" and unaware of what was happening during the proceedings. He subsequently received medication for his migraine while in IDOC, realized what he had agreed to, and moved to vacate his plea.

¶ 46    The record further shows that the trial court held a hearing on defendant's second motion to vacate his guilty plea at which counsel vigorously argued defendant's contentions. Counsel argued that defendant's debilitating "severe migraine" rendered him confused and unable to knowingly and voluntarily waive his rights and enter a guilty plea. Counsel explained that defendant's migraine persisted until around August 23 when defendant was transferred to IDOC and given medication that ended his migraine. Counsel also claimed the trial court "took caution" and continued the plea hearing from August 18 to August 19 because the court did not want to proceed with the hearing if defendant was in pain.

¶ 47    Following arguments, the trial court pointed out that the transcript from August 18 clearly showed that the reason why defendant's case was continued to the next day was to give the court time to view a 45-minute video that was the subject of defendant's motion to suppress statements; it was not because the court had been told defendant was not feeling well. The court stated that it had reviewed the record from defendant's guilty plea hearing and was standing on its initial ruling denying defendant's motion to vacate his guilty plea. The record thus shows that counsel strictly

complied with the requirements of Rule 604(d) and that the trial court conducted a meaningful hearing on defendant's second motion to vacate his guilty plea.

¶ 48    Based on this record, we find no merit in defendant's claim that counsel failed to fulfill his duties under Rule 604(d) because counsel did not submit defendant's medical records from IDOC to support the claim that a migraine interfered with defendant's ability to enter a knowing and voluntary guilty plea. Counsel's failure to present particular evidence cannot be grounds for an additional remand for further proceedings without a showing that such failure resulted in an unfair hearing on defendant's motion to vacate his guilty plea. See *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16. "[A] defendant seeking to withdraw his plea is entitled to a hearing that is *meaningful*, but only in the very limited sense that it is not a mere charade performed for the purpose of reinstating an appeal." (Emphasis in original.) *Id.* ¶ 14. When a defendant is deprived of a full and fair hearing, then remand is appropriate. See *id.* ¶ 16.

¶ 49    In *People v. Shirley*, 181 Ill. 2d 359 (1998), our supreme court held that repetitive remands for compliance with Rule 604(d) were not required. The court rejected the premise that the strict compliance standard

> "must be applied so mechanically as to require Illinois courts to grant multiple remands and new hearings following the initial remand hearing. Where, as here, the defendant was afforded a full and fair second opportunity to present a motion for reduced sentencing, we see limited value in requiring a repeat of the exercise, absent a good reason to do so." *Id.* at 369.

¶ 50    Here, although defendant places great importance on his IDOC medical records, he has not shown that their absence resulted in an unfair hearing on his motion to vacate his guilty plea or

deprived him of a full and fair hearing. *Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16. Significantly, Rule 604(d) requires an *affidavit* to support any claims raised in a defendant's motion that are based on facts that do not appear in the record. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The rule does not require counsel to submit any additional evidence to support the statements made in an affidavit. In this case, defendant's affidavit expressly stated that during the plea hearing "he was in such pain that he was unaware of the court proceedings and what was happening" and that "he was functionally unaware of what he was agreeing to." Defendant further stated that he received medication for his migraine while in IDOC custody. The record thus shows that these facts were clearly and sufficiently presented to the court in support of his motion as required by Rule 604(d).

¶ 51     The record further shows that in denying defendant's second motion, the trial court stated that it had reviewed the record from defendant's guilty plea hearing and was standing on its ruling from his initial motion to vacate. When the trial court denied defendant's initial motion at the hearing on September 27, 2022, the court stated that it was never told during the plea hearing that defendant had a migraine. The court noted that during the plea hearing, defendant was "very congenial" and thanked the court. Defendant never told the court that he did not feel well, that he was suffering from a migraine, or that he did not understand what was happening. The court recalled that it had asked defendant several questions and he replied that he understood the nature of the charge, the sentencing range, and the offer. Consequently, the court found that defendant failed to meet his burden to vacate his guilty plea.

¶ 52     Defendant correctly perceives that the trial court did not believe his claim that he had a migraine during the August 19 plea hearing that rendered him incapable of understanding the proceedings. The fact that defendant received medication for a migraine when he was in IDOC

custody four days later on August 23 does not establish that he had a debilitating migraine during the plea hearing. We therefore find that, even if counsel had submitted IDOC medical records showing defendant had a migraine on August 23, such evidence would not have proven that he was incapacitated during the plea hearing, especially when the trial court had already found that the transcript from the hearing contradicted his assertion.

¶ 53    For these reasons, we conclude that, on remand, counsel strictly complied with Rule 604(d) in accordance with our instructions. We, therefore, affirm the judgment of the circuit court of Cook County.

¶ 54    Affirmed.